The next case on today's docket is the case of Peoples v. Finley And we have Mr. William Farr for the appellant, and we have Mr. Stephen Cochran for the appellee And we may proceed, Mr. Cochran My name is William Farr, and I'm here on behalf of the appellant, James Perdue This involves an appeal as of right from a decision to the circuit court sitting in Shelby County, Illinois Where it was dismissed a multi-count complaint, a civil complaint, against the village of Tower Hill, the appellee In this situation, based upon all five counts, based upon local governmental court immunity And then on counts one and three, it was based upon absolute immunity The issues in this case are whether the application by the trial court of the governmental court immunity was correct And whether the trial court's application of absolute immunity was correct As I said, all counts were dismissed based upon governmental court immunity, and then two based upon absolute immunity The basic facts of this situation, there was a multi-count complaint, count one through five, libel Intentional infliction of emotional distress, invasion of the right to privacy, conspiracy to commit extortion, and willful and unlawful conduct It was based upon statements that are reflected in, I believe, the supplement to the record filed by counsel Affidavits that were filed, one affidavit in particular, three filed by Nancy Finley And one affidavit filed by Fannie Erfur And there are allegations against the character and temperament of Mr. Perdue And what we are alleging are actionable based upon libel and the other counts In the situation with the local governmental court immunity act, there are two prongs or two areas of examination the court undertakes One is whether the act was a determination of policy, and then whether the act involved an exercise of discretion The act or omission must be both in order for governmental immunity to be met And a determination of policy and an exercise of discretion Now, one of the things that courts, that teleports have been concerned with, it's the type of the position held by the employee And the type of action performed or omitted by the employee If I could, defendant Finley, as relates to determinations of policy, her duties pursuant to one of her three affidavits filed And it's in the record on page 50 She's the FOIA officer, the treasurer, and the water billing clerk of the village One of the things that has to be done in a determination of policy, there's a balancing of competing interests What determination of policy involves a balance of competing interests And then a judgment being made of what is in the public's best interest based upon those competing interests Exercise of discretion, the teleports have defined that as an act or omission that is unique to a particular office in this situation Obviously a governmental office Finley is the FOIA officer, there's no dispute about that But she does have a designee who happens to be the village attorney And as an aside, those are the records that we're seeking in the underlying Freedom of Information Act request Being that she is a designee, there isn't a lot of discretion or decision-making capabilities on what to answer or what not to answer Probably administratively she answers the questions or in this situation perhaps she might go ahead and send the FOIA request on to the designee who is the village attorney Assuming it's not an irrevocable designation, she could still exercise that discretion, couldn't she? Yes, she could, that's correct, yes Our argument is that with the designee, provided it is not an irrevocable designation, she could make decisions, that is correct Now, as a treasurer, and her affidavit again on page 50 of the record says she's dually appointed as a treasurer She doesn't determine policy, there is a distinction between discretionary acts and ministerial acts In my opinion, and I think the courts have agreed with me, that it's not a determination of policy to write the checks, generate water bills, write reports, make various statements and reports to the board to keep the board members advised The water billing clerk is just almost exactly the same, I can't think of anything more ministerial than the water billing clerk She sends the bills out, she generates reports to the board, based upon that she collects the fees There isn't any determination of policy in that regard In an exercise of discretion, if it is not an irrevocable designation, she would have the capability of exercising her discretion as to whether or not to answer Or what documents to be presented, if in fact it were not through the court, what documents would be presented to the requester under the Freedom of Information Act request As a treasurer, again, it's simply ministerial duties, there is no exercise of discretion in that job And the water billing clerk is the same situation, it's ministerial duties, she doesn't have any discretion to exercise in that regard So in that situation, applying all those together, her affidavit was neither a determination of policy nor an exercise of discretion In the situation particularly of this, if you go back to the contents about the character and temperament of Mr. Perdue, she is making statements of her own alleged fear She's not making statements that he lives in Tower Hill, but if he comes to Tower Hill or he comes to the Village Hall, there's going to be trouble She's saying in her affidavits that she is afraid of Mr. Perdue, her fear has nothing to do with the public's fear I mean, if she's a general representative of the public, that's fine, but she isn't the sole member of the, I think in my brief, I say 611 people in the Village So it's her fear, and her fear had nothing to do with whether the trial court should mandate the Village to turn the records requested over to us Or, in fact, whether the court should allow my client, Mr. Perdue, in my presence I would hope, to show up and inspect the records he's requested Now, with Defendant Urpher, if I could switch to her now, it's a bit of a different situation with her, because in her particular instance as a board member, current board member now At the time this was instituted, she was not acting in her capacity as mayor, which she had for, I think, 26 years, and that's in the record on page 53 She has the right to make some determination of policy because she is a member of the board, but it's hers and the other board members, she doesn't individually make those decisions So she has, in a manner of speaking, she has the capability of determining policy, but it's in conformity with the other members of the board And in that situation, they would be balancing competing interests and making decisions, but it's not her individually, it is the board collectively Now, in her decision to sign an affidavit, there weren't any competing interests that had any bearing on the public If there were competing interests, it was whether she should sign the affidavit, and what we're alleging, defame an individual It didn't have anything to do with the public interest as to whether she should sign that affidavit or not There wasn't a determination of policy in signing that affidavit There might have been an exercise of discretion, but the only choice in that regard, as I said, was whether she should sign the affidavit or not Now, it was in her own interest as well, based upon her affidavit and her alleged fear of Mr. Perdue It was in her best interest. Again, it wasn't in the public's interest. She was making a personal decision as relates to her And we believe that should remove her from the protection of the Local Governmental and Governmental Employees Toward Immunity Act Now, if I could move on to absolute immunity, that was based, the trial court based its dismissal of counts 1, libel, and count 3, invasion of right and privacy They do have, that is a correct statement of the law, the court was correct in that regard But the application is if the statements are relevant, pertinent, or have some bearing on the subject in controversy In this situation, the controversy, which we're asking the trial court to determine, is whether the records should be released And if they're released, whether or not we should be allowed to inspect the actual original records In Finley, she has the underlying cause of action in FOIA request, excuse me, the Freedom of Information Act request Was whether the matter falls, basically the court would decide whether there was an exemption to be used in not allowing the disclosure of the information In that situation, the mental health or the temperament or the character of Mr. Perdue has no bearing It just doesn't have any bearing on that decision Finley's statements don't relate to whether there's an exemption or whether they should be required to turn those matters over It just has no relation, the statements are not relevant, they're not pertinent, nor do they have any bearing on the subject matter in the controversy Can you tell me how they could be turned over without any interaction? Well, that's an excellent question, I would think there could be law enforcement there, I will be there My strong suspicion was that the village attorney, the designee, not irrevocable, but the designee of the FOIA officer would be there to do it And we think that would prevent any problem at all with any interaction between Mr. Perdue or any kind of Finley or Urpher And most likely it would be only Finley that would potentially be there Now, in that regard, it also is the same issue with Urpher, her affidavit, her personal fear had nothing to do with whether those documents should be turned over Her statements were not relevant, pertinent, and did not have any bearing on the controversy Thank you Thank you, that's the opportunity for rebuttal Thank you May it please the court Yes Thank you, counsel My name is Steve Kaufman, I'm with the Hippler Broom law firm, I represent Nancy Finley and Fannie Urpher in this matter I want to just make three brief points for the court because I think on both sides the issues are well briefed First of all, it's creeped into somewhat of the argument by counsel and then also in his brief that the merits of the underlying FOIA action are somehow relevant in this case And they are not in any respect relevant That case is ongoing, there's a judge assigned to it, that case will wind its way through the Shelby County court by itself But the merits of that matter are not relevant here With regard to your Honor's question about whether or not the remedy could be fashioned in such a way that the plaintiff and the defendants would not need to be together Again, I think your Honor, that goes to the merits of the underlying case and the way in which those documents will be produced as opposed to this particular case The second point I want to make is that the question here, and I agree with counsel in this regard, is whether filing the two affidavits in defending this FOIA lawsuit is actionable That's what we're here about The third point, and I think the most critical point is this, and it's the reason why we filed a motion to supplement the record We made this argument at the trial court and actually submitted to the trial court the petition in the underlying case But we moved to supplement the record so that your Honors would have before you the petition for judicial review And what's most important there is the prayer for relief, which says in paragraph B, asking for an order directing the defendant to make available to the plaintiff the original of the requested records for inspection by the plaintiff I think in the first case it's somewhat unusual that a requester of documents under FOIA needs to see the originals, but a specific request was made to make those available to the plaintiff What does FOIA require in that regard? I don't believe, Your Honor, that it requires production of the originals. I've never seen that And I haven't participated in a lot of FOIA requests myself Copies, I think, are more than sufficient So I don't think inspection of the original records is at all mandated And so really those affidavits of Ms. Finley and Ms. Erfur, when they talked about being frankly afraid to be in the plaintiff's presence They went to that request in the petition for the original records to be produced to the plaintiff That is why that certainly wasn't the only thing in their affidavits, but it was part of those affidavits when they were discussing the burden that was going to be imposed upon Tower Hill in having to produce those original documents to the plaintiff Is there any indication or any indication of the necessity that these named defendants be present at any inspection of the original documents? Could you have been present? Could anyone else have been present, authorized by them to supervise a visual inspection of the original documents, and the two of them have been out of town if they wanted to be? I don't think that the evidence in that regard is present in the case, Your Honor I do know that Ms. Finley, as the FOIA officer, would have had the ultimate duty to make sure that these documents had been produced in the fashion that they were requested and ordered by the court So I think implicit in that is that she felt she needed to be present as the FOIA officer Fannie Erfurth's affidavit, as the former mayor, but more importantly as the Tower Hill Board of Trustees member, she was basically corroborating Nancy Finley's belief that it was, frankly, she felt unsafe to be in the plaintiff's presence in producing those original documents So since you have these two current city officials submitting affidavits pursuant to litigation, which was instituted by the plaintiff, then the Tort Immunity Act 2-201 applies In submitting these affidavits, they were balancing competing interests and making a judgment call The best cases which talk about those requirements are the Harrison case and the Snyder case by the Illinois Supreme Court In the Harrison case, the Illinois Supreme Court decided that such issues as when to plow snow was a discretionary matter and a judgment call And the Tort Immunity Act applied In the Snyder case, it was determined by the Supreme Court that, and that was a case in which the allegation was that a traffic sign was improperly installed In that case, immunity was not applied because they decided that it was a ministerial act when the highway official was simply following the codebook which specifically stated where those signs were to be placed So I think when you look at Harrison and Snyder and consider that these two officials were acting in a discretionary manner, determining policy of the city and providing FOIA documents, exercising discretion, that they are protected by the immunity And then the final point, of course, is just the issue of counts 1 and 3, if you would ever get to that Those affidavits, because they were filed in a judicial proceeding and filed by officials, are protected by two separate privileges They were certainly pertinent and relevant to the relief requested by the plaintiff in his petition. All doubts are resolved in favor of relevancy So I think it's clear that those privileges apply We would ask, Your Honors, that you affirm the order of the Shelby County Court dismissing the entire case. Thank you Thank you, Mr. Kaufman. Mr. Clark, do you have a vote? I think there's a big difference between deciding to file an affidavit that besmirches the character of a member of the village and whether to plow snow at a certain time or in a certain manner What we have here, it's beyond the Local Governmental Court Immunity Act. It's beyond absolute immunity. It was intentional, obviously, and we think that should be overturned and sent back to the tribal court Thank you. Thank you both for your briefs and arguments, and we'll take the matter under advisement